## IN RE HAMPSHIRE.

*Divorce—Custody of child awarded mother—Rights of father after wife's death—Original jurisdiction exclusive and continuing—Guardianship by probate court void, when.*

1. Where husband and wife have been divorced and by decree of court the mother has been granted the exclusive custody of their minor child, under ten years of age, and the mother dies, the fact of her death gives to the father no higher right to the custody of the child than he had prior thereto; the custody of the child is still exclusively under the control of the court, and this jurisdiction is a continuing one and may be modified whenever the character and circumstances of the case or of the parties require it.

2. Where a decree of divorce has been granted in the county in which the parties then resided and a proper order has been made as to the custody of a minor child under ten years of age, and the custody of such child has been granted to the mother, who, up to the time of her decease, resided with the child in the county wherein the decree was originally entered, and the father, having removed to another county and there having gained a residence, is appointed guardian of such child in the county of his residence by the probate court therein, such appointment is null and void so far as the custody of the child is concerned, for the reason that such custody is exclusively vested in the court entering the original decree.

(Decided November 7, 1922.)

ERROR: Court of Appeals for Knox county.

*Mr. F. O. Levering,* for Hampshire.
*Messrs. Ewalt & Blair, contra.*

PATTERSON, J. On July 25, 1917, Maude B. Hampshire filed her petition in divorce against

her husband, Ross M. Hampshire, and such proceedings were had in this cause that on the first day of November, 1917, the plaintiff obtained a decree of divorce by the judgment and finding of the common pleas court of Knox county, the county in which such action was pending. The decree of divorce in part is as follows:

"It is therefore ordered and considered and adjudged by the court that the marriage contract heretofore existing between Maude B. Hampshire and Ross M. Hampshire be, and the same is hereby dissolved, and both parties are released from the obligations of the same.

"It is further ordered that the custody, care, education and control of the minor child of the parties hereto be, confided to the mother, Maude B. Hampshire, exclusively."

At the time of the filing of this petition for divorce the plaintiff and the defendant were the father and mother of a boy about six months old, and this boy is now about the age of five years.

Some time in the month of September, 1921, Maude B. Hampshire, the former wife and the exclusive custodian of this minor child, died. At the time of the commencement of the action for divorce the plaintiff and the defendant both resided in Mount Vernon, and at the time of the filing of the petition, and up until the time of her death, Maude B. Hampshire and the minor child resided with her parents, Mr. and Mrs. Austin Wright, in the city of Mount Vernon. Ross M. Hampshire remarried, and removed to Steubenville, and became a resident of Jefferson county.

After Mrs. Hampshire's death, some proceedings were had before the judge of the court of

common pleas with reference to the custody of this
minor child, and Ross M. Hampshire appeared at
these proceedings in person and by attorney.
While these proceedings were pending with reference to the custody of the child, on June 2, 1922,
Park B. Blair, Judge of the Common Pleas Court,
issued the following order in writing:

"My dear Mr. and Mrs. Wright—You are directed to let Ross have his child to visit with him
during Ross's stay in this county. He will probably want to keep him for several days. I am disappointed that he has not been permitted to have
him during my absence."

This letter was delivered to Mr. Hampshire, and
in company with the court bailiff he went to the
home of Mr. and Mrs. Wright and there secured
the child and immediately left with the child to
the place where he now resides in Jefferson county,
Ohio, and has had this child there ever since.

Thereupon contempt proceedings were filed
against Hampshire, and the matter was heard before the court of common pleas of Knox county,
and Hampshire was adjudged to be in contempt
of court, and the court of common pleas made the
following order and finding:

"It is therefore considered and adjudged by the
court that the said Ross M. Hampshire be, and
he is hereby required to return the said child, to-
wit: Donald Hampshire to the home of its grand-
parents, Mr. and Mrs. Austin Wright, in Mount
Vernon, Ohio, from whence he took said child, also
that he pay a fine of $25 and the costs of this ac-
tion, and that he stand committed to the jail of
Knox County, Ohio, until he has fully complied
with the terms hereof, and shall have returned said

child to its grandparents; and that a warrant issue
for such commitment if he fail to comply with the
said sentence and judgment herein.''

To this judgment and finding, that Ross M.
Hampshire was guilty of contempt of court, error
is prosecuted to this court.

It is contended upon the part of the plaintiff in
error, Ross M. Hampshire, first, that there is no
order of court of record in the court of common
pleas of Knox county in the case of Hampshire
against Hampshire subsequent to the death of the
mother; second, that upon the death of the mother,
the care and custody of this minor child auto-
matically reverted to the father.

We will consider these propositions in the in-
verse order. Sections 8032 and 8033, General
Code, provide as follows:

"*Rights and Duties of Parents Separated or
Divorced*—When husband and wife are living sep-
arate and apart from each other, or are divorced
and the question as to the care, custody and con-
trol of the offspring of their marriage is brought
before a court of competent jurisdiction in this
state, they shall stand upon an equality as to the
care, custody and control of such offspring, so far
as it relates to their being either father or mother
thereof.

"*Court to Determine Custody of Children*—
Upon hearing the testimony of either or both of
such parents, corroborated by other proof, the
court shall decide which one of them shall have
the care, custody and control of such offspring,
taking into account that which would be for their
best interests, except that, if such children be ten
years of age or more, they must be allowed to

choose which parent they prefer to live with, unless the parent so selected, by reason of moral depravity, habitual drunkenness or incapacity, be unfitted to take charge of such children, in which event the court shall determine their custodian. The above provisions permitting children to choose their parent with whom they desire to live, also shall apply to proceedings for modification of the former orders of the court, fixing the custody thereof, as in original actions. If upon such hearing it should be proved that both parents are improper persons to have the care, custody and control of their children, in its discretion, the court may either designate some reputable and discreet person to take charge thereof, or commit them to a county or district children's home in which they or their parents have a legal settlement.''

It is contended upon the part of the plaintiff in error that these are the governing and controlling sections with reference to this case, and that, according to their provisions, upon the death of the mother who was granted the custody of this child, the father has the right to its care and custody.

However, these sections must be construed in connection with Section 11987, and we are of the opinion that this is the controlling section in this case. The latter part of Section 11987 reads:

''The court shall make such order for the disposition, care and maintenance of the children, if any, as is just.''

In the trial of the divorce case, the court deemed it just and proper to grant the exclusive custody of this child to the wife, and, whatever may be the law in other states, we are of the opinion

that it is settled in Ohio that the custody of minor children when decreed by the court is continuing and that the court making such order has the exclusive right at all times to change its order or make such new orders as may be just and proper with respect to the custody of the minor children involved in a divorce case.

In *Rogers* v. *Rogers*, 51 Ohio St., 1, the court says at page 4:

"The authority of the court over the matter of custody of minor children of parties to divorce proceedings is probably inherent, but it is in terms given by the divorce statute, Section 5696 [now Section 11987, General Code], where it is provided that 'the court shall make such order for the disposition, care, and maintenance of the children, if any there are, as is just and reasonable.' That this jurisdiction is a continuing one, and that it 'may, on proper application, be invoked to modify orders originally made in respect to the custody of children whenever the character and circumstances of the case or of the parties require it,' was held in the case of *Hoffman* v. *Hoffman* 15 Ohio St., 427, and affirmed in *Neil* v. *Neil*, 38 Ohio St., 558."

In the enactment of laws relative to the custody of minor children where the parents are divorced, it was evidently the intention of the legislature to enact laws such that the interests of those who are affected by them would be taken care of, such that the persons whose interests are to be affected are treated as wards of the court, and it was intended to provide for the care of these wards rather than for the care of their parents, and the question to be determined in such proceedings is

the question of what is for the best interest of
the ward. It follows from this decision in the
*Rogers case,* and from the Ohio cases therein
cited, that the order for the custody of this minor
child was a continuing order by the court of
common pleas of Knox county, and that upon the
death of the mother the custody of this child did
not automatically revert to its father but was
subject to the further orders of the court entering
the original decree.

With reference to the first proposition contended
for by the plaintiff in error, that there is no order
of court of record entered since the death of the
mother, it appears of record that the court of
common pleas was still exercising jurisdiction over
the custody of this child; that the plaintiff in error
recognized this jurisdiction by appearing in per-
son and by attorney with reference to some modifi-
cation of the former order made necessary by
the death of the mother. The claim is made that
there were some papers formally filed, but the
claim is made that they are lost and do not now
appear of record, however we are of the opinion
that that is not material to the disposition of this
case, inasmuch as we have held, as stated above,
that the common pleas court still retains jurisdic-
tion over the custody of this child by virtue of
the original decree.

It is also claimed upon the part of the plaintiff
in error that he has been appointed guardian of
this minor child by the probate court of Jefferson
county, the county in which he now resides, but
the proof in this case shows conclusively that
this child has always been a resident of Knox
county, having resided with its mother and grand-

parents until the death of the mother, and with its grandparents subsequent to the death of the mother and up until the time the child was removed from the county by the father.

Section 10915, General Code, provides: "When necessary the probate court in each county shall appoint guardians of minors *resident in such county.*"

This appointment can confer upon the plaintiff in error no higher rights, as it will be noted that this appointment must be made in the county in which the minor resides, and this minor having always resided in Knox county the probate court of Jefferson county could acquire no jurisdiction whatever by the appointment of a guardian, and the appointment of a guardian would be null and void and therefore could not confer upon the guardian so appointed any rights whatever as to the care and custody of the child.

*Judgment affirmed.*

SHIELDS and FARR (of the Seventh Appellate District, sitting in place of HOUCK, J.), JJ., concur.